J-A21033-19

2020 PA Super 42

| | | |
|---|---|---|
| WAKEEM FORD-BEY, ADMINISTRATOR OF THE ESTATE OF WANETTA FORD-BEY | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : | |
| PROFESSIONAL ANESTHESIA SERVICES OF NORTH AMERICA, LLC; JOEL D. SOKOLOFF, M.D.; THOMAS MADDALONI, CRNA; SCOTT WILSON, CRNA ; PHYSICIANS CARE SURGICAL HOSPITAL, LP | : : : : : : : : : | No. 677 EDA 2019 |
| APPEAL OF: THOMAS MADDALONI, CRNA | : : | |

Appeal from the Order Entered January 14, 2019
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  No. 2017-02996

BEFORE:  BOWES, J., OLSON, J., and FORD ELLIOTT, P.J.E.

OPINION BY BOWES, J.:                    **FILED FEBRUARY 20, 2020**

Thomas Maddaloni, CRNA[1] appeals from the January 14, 2019 order[2]

compelling him to produce his handwritten notes that he claims are protected

from disclosure by the attorney-client and work-product privileges.  The trial

_____

[1] The designation "CRNA" signifies Certified Registered Nurse Anesthetist.

[2]  Mr. Maddaloni purports to appeal from the December 12, 2018 order compelling production and overruling claims of privilege.  The appeal properly lies from the January 14, 2019 order, which, following reconsideration, re-confirmed the December 12, 2018 order.  We have amended the caption accordingly.

court found that Mr. Maddaloni had not satisfied the four elements necessary to successfully invoke the attorney-client privilege. Additionally, the court found that Mr. Maddaloni failed to make the showing necessary for application of the work-product privilege, *i.e.*, that his notes contained his counsel's mental impressions or strategy. After careful review, we affirm.

The facts giving rise to the legal action are as follows. Wanetta Ford-Bey ("Decedent") underwent surgery at Physician's Care Surgical Center ("Surgical Center") on June 12, 2015. She died shortly thereafter of respiratory failure. Wakeem Ford-Bey, the Administrator of Decedent's estate ("Administrator") commenced this medical malpractice action against Professional Anesthesia Services of North America, LLC, Joel D. Sokoloff, M.D., Mr. Maddaloni, Scott Wilson, CRNA, and the Surgical Center on February 13, 2017.

During the course of discovery, a dispute arose that is the subject of the instant appeal. At Mr. Maddaloni's discovery deposition, the following exchange took place:

Q: When you reviewed the chart in preparation for your deposition, did you have it printed out like it is in front of you?

A: Yes.

Q: Okay. Did you take any notes while you were reviewing it?

A: No, I did not.

Q: Did you write anything on your copy of the chart?

A: I believe I did.

Q: And was that to assist you in your review?

A: Yes.

Q: And did you write those notes at home? Or wherever you were reviewing the chart, did you write those notes?

A: Yes.

Q: Okay. And where is your copy of the chart?

A: It's at my home.

Q: If you didn't have the chart, would you be able to remember the specifics of each and every aspect of the treatment that was provided to Mrs. Ford-Bey on June 12th?

A: No.

Maddaloni Deposition, 2/1/18, at 27-28. Administrator's counsel asked for a copy of the annotated record, but Mr. Maddaloni's counsel objected, asserting attorney-client and work-product privileges.

On March 5, 2018, Administrator served supplemental interrogatories and requests for production directed to Mr. Maddaloni for "a copy of the . . . chart in the possession of [Mr. Maddaloni], which includes all notes, typed or handwritten, prepared by [him] prior to and in preparation of [his] February 1, 2018 deposition." Supplemental Interrogatories and Requests for Production, 3/5/18, at ¶2. The request expressly excluded "references to mental impressions, conclusions, opinions, memoranda, notes or summaries, legal research or legal theories of [Mr. Maddaloni]'s attorney and mental impressions, conclusions or opinions respecting the value or merit of the claim or defense or respecting strategy or tactics of [Mr. Maddaloni]'s

representative." ***Id***. Mr. Maddaloni objected to the request on the ground that "it seeks information prepared in anticipation of and during the course of litigation, protected by attorney-client privilege and/or the attorney work product doctrine, and beyond the bounds of permissible discovery under Pa.R.C.P. 4003.3." ***See*** Answer to Plaintiff's Supplemental Interrogatories and Request for Production of Documents, 8/8/18, at ¶2.

Administrator filed a motion to compel, which Mr. Maddaloni opposed, and the matter was heard by the discovery master. The trial court, based on the recommendation of the master, entered an order on December 12, 2018, directing Mr. Maddaloni to produce the annotated chart within twenty days, and overruled his objections based on privilege.

Mr. Maddaloni filed a motion for reconsideration, which the trial court granted. Oral argument took place on January 10, 2019. Counsel for Mr. Maddaloni represented that his client made the notes "at the direction of or on the advice of counsel," but acknowledged that this fact was not in the record. N.T. Motion for Reconsideration, 1/10/19, at 13-14. When asked by the court if counsel was relying on "any facts of that nature," or simply relying upon the deposition and other record facts, counsel indicated that they were relying upon the deposition and record. ***Id***. at 14.

Administrator argued that, since there was no evidence that the handwritten notes were made at counsel's request, in his presence, or for purposes of obtaining counsel's advice, "the attorney-client privilege has not been made out." ***Id***. at 23. Mr. Maddaloni offered to provide a supplement if

the court needed it, but steadfastly maintained that the decision could be made on the record as it stood because Administrator, the party seeking the discovery, had not developed a record that would compel production. *Id*. at 24.

By order of January 14, 2019, the court re-confirmed its December order directing that the copy of the chart bearing Mr. Maddaloni's handwritten notes be produced within seven days of the docketing of the order. Mr. Maddaloni did not comply. Instead, nine days after the order was docketed, Mr. Maddaloni filed a motion seeking to supplement the record with his affidavit dated January 18, 2019. The court denied the motion by order of January 30, 2019.[3]

Mr. Maddaloni filed a notice of appeal to this Court on February 12, 2019,[4] and complied with the court's order to file a Pa.R.A.P. 1925(b) concise

_____

[3] In the proffered affidavit, Mr. Maddaloni stated that some of the notes were made while meeting with counsel, others while he reviewed the chart to prepare his defense. Affidavit of Thomas Maddaloni, 1/18/19, at 1. He represented further that all handwritten notes were made with the express intention to communicate information to his attorney for purposes of securing legal assistance, and he did not share the notes with any third persons.

[4] Mr. Maddaloni relies upon Pa.R.A.P. 313 and the collateral order doctrine as the basis for our jurisdiction to entertain this interlocutory appeal. As this Court recently reaffirmed in *Farrell v. Regola*, 150 A.3d 87, 95 (Pa.Super. 2016), when an appellant asserts that the trial court has ordered him to produce materials that are privileged, we have jurisdiction under Pa.R.A.P. 313(b) ("A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost."). *See also Ben*

statement of errors complained of on appeal. The trial court penned its Rule 1925(a) opinion, and the matter is ripe for our review. Mr. Maddaloni presents three issues for our review, which we have re-ordered for ease of disposition:

1. Whether the trial court erred and/or abused its discretion in denying [Mr. Maddaloni]'s Motion to Supplement the Record with an Affidavit that [Mr. Maddaloni] offered – which simply memorialized evidence already in the record that established the notes were privileged and protected from discovery pursuant to the attorney-client privilege and work product doctrine - where there would have been no prejudice to plaintiff had the Affidavit been accepted?

2. Whether the trial court erred and/or abused its discretion by ordering [Mr. Maddaloni] to produce handwritten notes, created after commencement of litigation and in preparation for his deposition, where the notes were either written in the presence of [Mr. Maddaloni's] counsel, or for the purpose of securing legal advice, hence, are protected from discovery by the attorney-client privilege?

3. Whether the trial court erred and/or abused its discretion in directing [Mr. Maddaloni] to produce his handwritten notes, where such notes reflect his counsel's mental impressions, hence are protected from discovery by the work-product doctrine, as codified by Pennsylvania Rule of Civil Procedure 4003.3, relating to trial preparation material?

Appellant's brief at 5.

Mr. Maddaloni initially contends that the trial court abused its discretion in denying his motion to supplement the record with his affidavit. He alleges that the court imposed "an excessively stringent standard of proof and failed to properly allow additional substantiation of facts already before the court."

---

*v. Schwartz,* 729 A.2d 547 (Pa. 1999); *Yocabet v. UPMC Presbyterian*, 119 A.3d 1012, 1016 n.1 (Pa.Super. 2015).

Appellant's brief at 28-29. "In view of the importance of the rights involved and the absence of prejudice to [Administrator]," Mr. Maddaloni maintains that the court should have permitted him to supplement evidence that already existed. *Id*. at 29.

In the trial court's view, the pleading styled as a motion to supplement the record was "in substance a second motion for reconsideration." Trial Court Opinion, 4/1/19, at 15. Appended thereto was new evidence, *i.e.*, an affidavit averring new facts that had not been presented before. Citing this Court's decisions in ***Bollard & Assocs., Inc. v. H & R Indus., Inc.***, 161 A.3d 254, 256 (Pa.Super. 2017), and ***Kelly v. Siuma***, 34 A.3d 86 (Pa.Super. 2011), the trial court maintained that it was within its discretion to refuse to consider new evidence presented for the first time in a motion for reconsideration. Moreover, it reasoned that the facts herein presented an even stronger basis for refusing to consider new evidence as it was a second request for reconsideration of the initial discovery order.[5] In denying the motion, the court concluded that, "Under these circumstances, the introduction of new evidence that could have been presented previously is contrary to any concept of orderly procedure." *Id*. at 16.

---

[5] The trial court acknowledged that the affidavit, if timely offered, would have been legally sufficient to shift the burden to Administrator to negate the claim of privilege.

We find no error or abuse of discretion on the part of the trial court. The trial court granted reconsideration and permitted Mr. Maddaloni to make a case in support of privilege. At the January 10, 2019 argument, counsel for Mr. Maddaloni initially advanced an entirely new legal theory in support of non-disclosure of the notes.[6] In support of the applicability of the attorney-client privilege, however, he was content to rest on the facts established during his client's deposition.

Counsel rejected the court's position that it mattered whether the client communicated the information with his attorney. He insisted that notes penned by a client to help him remember information were attorney-client privileged "either way." *Id*. at 8. Thus, counsel argued that it did not matter whether the notes were made in the presence of counsel since Mr. Maddaloni testified that he reviewed the Surgical Center chart with his attorney. *Id*. at 9. In short, Mr. Maddaloni took the position that notes made by a client to assist the client in preparing for his deposition were attorney-client or work-product privileged regardless of whether they were communicated to the attorney. *Id*. at 11. He argued that the drafters of Rule 4003.3 assumed that a client's notes constituted work-product when they specifically extended protection to the attorney or his investigator. *Id*. at 5.

_____

[6] Counsel for Mr. Maddaloni asserted that **Commonwealth v. Fromal**, 195 A.2d 174 (Pa.Super. 1963), prohibited opposing counsel from obtaining a writing which a witness used to refresh his recollection prior to examination where the witness was able to testify from his independent recollection, an argument that he abandons on appeal. **See** N.T. Motion for Reconsideration, 1/10/19, at 4-5.

The court asked whether it was "[Counsel's] position that Mr. Maddaloni made these notes at the direction of or on the advice of his counsel? Counsel responded, "It is – I know that to be the case. But having said that, that's not in the record before you." *Id*. at 13. The court asked for confirmation that counsel for Mr. Maddaloni was "not relying upon any facts of that nature," but relying simply on what is of record from the deposition. *Id*. at 13-14. Counsel responded in the affirmative, adding that, "it doesn't have to be at the direction of counsel." *Id*. at 14.

Administrator countered that there was no evidence of record indicating that Mr. Maddaloni intended to share those notes with counsel for purposes of obtaining legal advice. *Id*. at 16. Finally, Administrator argued that work-product of the party is discoverable unless it contains the mental impressions of the attorney or a representative of the party, and that Rule 4003.3 does not protect the mental impressions of a party.

Generally, we do not allow new evidence to be presented in a motion for reconsideration, let alone in a second motion seeking to supplement the record for additional reconsideration. **See Kelly**, **supra**, at 94 n.8 (holding trial court properly refused to consider three affidavits attached to motion for reconsideration raising new issues and arguments). Nonetheless, as the foregoing indicates, the trial court granted reconsideration and gave Mr. Maddaloni a second opportunity to make the requisite showing for application of the attorney-client and work-product privileges. Mr. Maddaloni's counsel first advanced an entirely new legal argument, and then reiterated his prior

position that the facts elicited in his client's deposition were sufficient to support his client's invocation of privilege. Even after the court reaffirmed its earlier ruling, Mr. Maddaloni waited until after the court-ordered date for production before seeking permission to supplement the record with his affidavit. On these facts, we find the trial court did not abuse its discretion in refusing to permit Mr. Maddaloni a third opportunity to substantiate the claim of privilege.

We turn now to the question whether the trial court erred in holding that Mr. Maddaloni failed to establish that the notes were attorney-client or work-product privileged.[7] The application of the attorney-client privilege and work-product doctrine are questions of law over which our standard of review is *de novo* and our scope of review is plenary. **BouSamra v. Excela Health**, 210 A.3d 967, 973 (Pa. 2019).

The threshold question before us is whether Mr. Maddaloni properly invoked the attorney-client privilege. The attorney-client privilege is codified at 42 Pa.C.S. § 5928. It provides that, unless a client waives the privilege, an attorney is not competent to testify in a civil case about his client's

---

[7] The instant appeal does not involve waiver of the attorney-client or work-product privilege, either by failure to assert them or disclosure to improper third persons. The privileges were timely asserted by objection at Mr. Maddaloni's deposition, and again in opposition to a supplemental motion to compel production. Rather, at issue is whether the party asserting privileges demonstrated facts that justify the application of the claimed privileges. **See Law Office of Douglas T. Harris v. Phila. Waterfront Partners, LP**, 957 A.2d 1223, 1230 n.8 (Pa.Super. 2008) (and cases cited therein).

confidential communications to him, and the client cannot be compelled to disclose those communications. *Id*. The attorney-client privilege allows "counsel to provide legal advice based upon the most complete information from the client." *Yocabet*, *supra* at 1027. As our Supreme Court held in *Gillard v. AIG Ins. Co.*, 15 A.3d 44 (Pa. 2011), the privilege protects communications from both lawyers to their clients and clients to their lawyers.

To invoke application of the attorney-client privilege, four elements must be established:

1) The asserted holder of the privilege is or sought to become a client.

2) The person to whom the communication was made is a member of the bar of a court, or his subordinate.

3) The communication relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing either an opinion of law, legal services or assistance in a legal matter, and not for the purpose of committing a crime or tort.

4) The privilege has been claimed and is not waived by the client.

*Yocabet v. UPMC Presbyterian*, 119 A.3d 1012, 1027 (Pa.Super. 2015).[8]

_____

[8] The Restatement (Third) of the Law Governing Lawyers § 68, Attorney-Client Privilege, similarly provides that the privilege may be invoked with respect to:

    (1)    a communication
    (2)    made between privileged persons
    (3)    in confidence
    (4)    for the purpose of obtaining or providing legal assistance
           for the client.

Mr. Maddaloni facially invoked the attorney-client privilege at his deposition and in his responses to requests for production. As the party asserting the privilege, he "bears the initial burden of producing sufficient facts to show that [he] has properly invoked the privilege for the communications that [he] has declined to disclose." *Custom Designs & Mfg. Co. v. Sherwin-Williams Co.*, 39 A.3d 372, 379 (Pa.Super. 2012). This often entails an affidavit, statement, or testimony clarifying the circumstances under which the communication was made. *Id*. The trial court must determine whether the facts support the asserted privilege. *See Law Office of Douglas T. Harris v. Phila. Waterfront Partners, LP*, 957 A.2d 1223, 1231 (Pa.Super. 2008) (citing 8 Wigmore, Evidence, § 2322 (McNaughton rev. 1961)); *accord Nationwide Mut. Ins. Co. v. Fleming*, 924 A.2d 1259, 1265-66 (Pa.Super. 2007) (*affirmed by an equally divided court*, 924 A.2d 1259 (Pa. 2010); *Carbis Walker, LLP v. Hill, Barth & King, LLC*, 930 A.2d 573, 581 (Pa.Super. 2007) (explaining that party asserting privilege must initially set forth facts showing that the privilege has been properly invoked). If the trial court finds that the party invoking privilege has proffered proof to satisfy the test, "the burden shifts to the party seeking disclosure to set forth facts showing that disclosure should be compelled either because the privilege has been waived or because an exception to the privilege applies." *Id*. Absent a sufficient showing of facts to support the privilege, the burden does not shift and the communications are not protected.

Herein, the trial court concluded that Mr. Maddaloni failed to prove that his notes were communications, *i.e.*, that he communicated them or intended to communicate them to his attorney. Nor did he demonstrate that his notes reflected communications from his attorney. Hence, the court found that the burden did not shift as Mr. Maddaloni had not made the requisite factual proffer for application of the privilege.

Mr. Maddaloni contends that the trial court's finding that the notes were not privileged flies in the face of our decision in **Farrell v. Regola**, 150 A.3d 87, 95 (Pa.Super. 2016). He cites **Farrell** for the proposition that a client's notes are, *ipso facto,* attorney-client privileged. The trial court rejected Mr. Maddaloni's view of our holding in **Farrell**, and concluded that Mr. Maddaloni presented "no evidence – either in response to the Plaintiff's Motion to Compel or in support of his Motion for Reconsideration - that his handwritten notes reflected communications made or to be made by or to his attorney 'for the purpose of obtaining or providing professional legal advice.'" Trial Court Opinion, 4/1/19, at 13 (quoting **Gillard**, **supra** at 59).

Mr. Maddaloni misapprehends **Farrell**. In that case, we held that the client's notes taken at both his criminal trial and the civil trial at the direction of his attorneys and **given** to the attorneys for their use were attorney-client privileged. What distinguishes the facts herein from those in **Farrell** is that there is no evidence that Mr. Maddaloni's notes, *i.e.*, the client's thoughts and impressions, were "communicated" to counsel or intended for that purpose.

Mr. Maddaloni stated in his deposition that he wrote notes on his copy of the chart to assist in his review. *See* Maddaloni Deposition, 2/1/18, at 27-28. He did not write the notes, however, while reviewing the chart. *Id*. He reviewed the chart at his home, and at the time of his deposition, the annotated chart was located at his home. Even considering counsel's representation at the argument on the motion for reconsideration that the notes were made "at the direction of or on the advice of counsel," proof that the notes were confidential communications between attorney and client, or related thereto, was absent. *See*, *e.g.*, *In re Investigating Grand Jury of Philadelphia County No. 88-00-3503*, 593 A.2d 402 (Pa. 1991) (holding that bank president's handwritten notes taken during a meeting with counsel reflected confidential communications with counsel and fell within the scope of the privilege). The record in this case does not reveal whether the notes written by Mr. Maddaloni were communicated or intended to be communicated to counsel to secure legal services or assistance, as was the case in *Farrell*. Nor does the record indicate that Mr. Maddaloni's notes reflect counsel's communications as in *In re Investigating Grand Jury of Philadelphia*. Herein, there is no evidence that Mr. Maddaloni transmitted his notes to counsel or that the notes reflected counsel's communications to the client. In short, there is no evidence that the notes were **communicated**, which is the very essence of the attorney-client privilege. *See Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981) (stating the protection of the attorney-

client privilege extends only to communications and not to facts). For these reasons, we find no error or abuse of discretion in the trial court's holding that, absent proof that the notes reflected communications between attorney and client, or that they were intended for that purpose, Mr. Maddaloni failed to properly invoke the attorney-client privilege.

Nor did Mr. Maddaloni establish that the work-product privilege protected his notes from disclosure. The work-product privilege, in contrast to the attorney-client privilege, belongs to the attorney, not the client. *BouSamra*, *supra* at 975. It is codified in Pa.R.C.P. 4003.3, and provides:

> Subject to the provisions of Rules 4003.4 and 4003.5, a party may obtain discovery of any matter discoverable under Rule 4003.1 even though prepared in anticipation of litigation or trial by or for another party or for that other party's representative, including his or her attorney, consultant, surety, indemnitor, insurer or agent. The discovery shall not include disclosure of the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories. With respect to the representative of a party other than the party's attorney, discovery shall not include disclosure of his or her mental impressions, conclusions or opinions respecting the value or merit of a claim or defense or respecting strategy or tactics.

Pa.R.C.P. 4003.3.

As our Supreme Court reaffirmed in *BouSamra*,

> The purpose of the work product doctrine is to protect the mental impressions and processes of an attorney acting on behalf of a client, regardless of whether the work product was prepared in anticipation of litigation. Work product protection provides a privileged area within which an attorney can analyze and prepare a client's case by enabling attorneys to prepare cases without fear that their work product will be used against their clients.

*BouSamra*, *supra* at 976-77 (internal citations and quotations omitted).

Mr. Maddaloni acknowledges that Rule 4003.3 is silent as to the mental impressions of a party himself. However, he contends that a party's notes after litigation has commenced are likely to reflect his counsel's mental impressions. Appellant's brief at 25. Mr. Maddaloni maintains that clients and attorneys are not required to parse out what portions of their notes represent information that will be communicated for purposes of obtaining legal advice and what portions represent counsel's advice. *Id*. Such restrictions, he claims, would have a "chilling effect on free flow of information between client and attorney." *Id*. He relies upon **Hickman v. Taylor**, 329 U.S. 495 (1947), the landmark United States Supreme Court case regarding attorney work-product protection and argues, without citation to authority, that its rationale is equally applicable and should be extended to protect the "mental impressions and trial strategies of the party himself." Appellant's brief at 27.

Instantly, the trial court started from the premise that Mr. Maddaloni's handwritten notes, even if prepared in anticipation of litigation or trial, were discoverable if they constituted unprivileged "matter . . . relevant to the subject matter involved in the pending action." Pa.R.C.P. 4003.1. Rule 4003.1 expressly provides that any matter, "even though prepared in anticipation of litigation or trial by . . . another party or by or for that other party's representative, including his or her attorney, consultant, surety, indemnitor, insurer or agent" is discoverable. However, discovery shall not include disclosure of the mental impressions of a party's attorney or his

representative. The issue here was whether Mr. Maddaloni established that his notes were privileged under Rule 4003.3, *i.e.*, that they reflected the mental impressions of his attorney or representatives of his attorney.

Mr. Maddaloni simply offered no proof that his notes contained the mental impressions of his attorney or of his attorney's representatives. To the extent his notes, or portions of them, reflected counsel's advice or strategy, the notes would be entitled to work-product protection, and perhaps attorney-client protection. A privilege log is often prepared to parse out which information is entitled to protection as attorney work-product or attorney-client communications. In some instances, *in camera* review is required to evaluate whether matter is privileged. Herein, Mr. Maddaloni offered no privilege log or any support for his contention that his notes contained his counsel's mental impressions or strategy and constituted attorney work-product. Moreover, Mr. Maddaloni cites no authority, and we know of none, supporting his contention that the mental impressions of the client automatically are protected from disclosure under the attorney work-product doctrine.

After a thorough review of the record, we find no error of law or abuse of discretion on the part of the trial court. Mr. Maddaloni failed to timely satisfy the element requiring proof that his notes were communicated or intended to be communicated to his attorney, or reflected communications from his attorney, in order to avail himself of the protection afforded by the

attorney-client privilege. Furthermore, the record does not establish that his notes written on a copy of Decedent's chart during the course of litigation reflected or contained counsel's mental impressions and strategies, bringing them within the scope of protected attorney work-product.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/20/20