J-S14014-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| SUSAN J. PALUMBO, EXECUTRIX FOR THE ESTATE OF FRANK BOSANAC, DECEASED AND BARBARA BOSANAC, INDIVIDUALLY | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | No. 2838 EDA 2024 |
| | : | |
| IMO INDUSTRIES, INC., ITT LLC SII BELL & GOSSETT, METROPOLITAN LIFE INSURANCE COMPANY, UNION CARBIDE CORPORATION, AMPCO-PITTSBURGH F/K/A AMPCO-PITTSBURG SECURITIES, CRANE COMPANY, DAP, INC., FLOWSERVE US, INC., GATX LEASING COMPANY A/K/A GATX CORPORATION A/K/A GATX, GOULDS PUMPS, LLC, GRINNELL, LLC, IPSEN PHARMACEUTICALS, INC., IPSEN BIOPHARMACEUTICALS, INC., LEEDS & NORTHRUP COMPANY, SECO/WARWICK CORPORATION F/K/A SUNBEAM EQUIPMENT COMPANY, UNION CARBIDE CORPORATION SUCCESSOR-IN-INTEREST, SURFACE COMBUSTION, INC., | : | |

Appeal from the Order Entered September 12, 2024
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 191101665

BEFORE: DUBOW, J., BECK, J., and STEVENS, P.J.E.*

MEMORANDUM BY DUBOW, J.:                    **FILED AUGUST 27, 2025**

_____

* Former Justice specially assigned to the Superior Court.

Susan J. Palumbo, Executrix for the Estate of Frank Bosanac, deceased, and Barbara Bosanac, individually, (collectively, "Appellants"), appeal from the final order entered on September 12, 2024, which dismissed this case against the Manville Fund and marked the case settled as to all other parties. Appellants challenge the November 6, 2023 order granting the motion for summary judgment filed by SECO/Warwick Corporation, f/k/a Sunbeam Equipment Company ("Appellee") and dismissing all claims and cross-claims against it. After careful review, we affirm.

The relevant facts and procedural history are as follows. On June 24, 2019, Frank Bosanac, Jr. ("Decedent") was diagnosed with mesothelioma. On November 13, 2019, Decedent and Appellant, Barbara Bosanac, filed the instant action. The complaint alleged that Decedent was regularly exposed to asbestos when he worked as a bricklayer at Pittsburgh Forging from 1960-1992. In particular, Appellants alleged that Decedent was exposed to asbestos when he removed and installed asbestos-containing firebrick in furnaces manufactured by Sunbeam Equipment Company ("Sunbeam"). Appellants instituted suit against, *inter alia* Appellee on the grounds that Appellee undertook successor liability for Sunbeam's actions.[1] On January 1, 2020, Decedent died and Appellant, Susan J. Palumbo, executrix of Decedent's estate, was substituted as a party.

_____

[1] For purposes of the motion for summary judgment, we will assume that Sunbeam was the predecessor of Appellee and that Appellee undertook successor liability; we make no finding, however, that this allegation is true.

Decedent died before being deposed. However, on January 6, 2021, the parties deposed his former coworker, Gilbert Davis ("Mr. Davis"). Mr. Davis, who worked in a Pittsburgh Forging storeroom, testified that he began working with Decedent in 1969. He testified that Pittsburgh Forging had 25 heat treat furnaces, only two of which were manufactured and supplied by Sunbeam during the time Decedent worked there. Mr. Davis testified generally that he believed Decedent was exposed to asbestos while working on the furnaces and that he observed Decedent work on a Sunbeam furnace on three occasions.

Mr. Davis specifically testified that four or five times a month he would help Decedent repair all the furnaces, including the two furnaces manufactured and supplied by Sunbeam. Mr. Davis identified three products used in Sunbeam furnaces that he believed contained asbestos: firebricks, insulation, and mortar.

Mr. Davis explained that, when repairing the furnaces, Decedent removed old bricks with a wedge and replaced them with new bricks manufactured by A.P. Green. Mr. Davis testified that, to the best of his belief, the A.P. Green bricks contained asbestos. He did not explain why he believed the A.P. Green bricks contained asbestos.

Mr. Davis also testified that sometimes Decedent would "patch" the furnaces with new firebricks, a process that involved using insulation that Mr. Davis believed contained asbestos. He did not explain why he believed the insulation product contained asbestos.

Mr. Davis testified that he and Decedent also sometimes made "shields" for the furnaces. To install a shield, Mr. Davis explained that they would use a dry mortar that came in a bag manufactured by "NARCO." Mr. Davis testified that he believed the NARCO material contained asbestos. Again, he did not explain why he believed that NARCO material contained asbestos.

Additionally, Mr. Davis admitted, *inter alia*, that he did not have any training in the identification of asbestos-containing products and could not distinguish between an asbestos-containing firebrick and a non-asbestos-containing firebrick. Mr. Davis also admitted that he never saw labels on these products that would indicate that the products contained asbestos. Of most significance, Mr. Davis did not identify Sunbeam as a supplier of any firebrick, insulation, or mortar.

Appellants also asserted that the Sunbeam furnaces contained asbestos. Appellants relied on two unauthenticated documents purporting to show that Sunbeam sold asbestos-containing parts to Pittsburgh Forging. One document is a shipping order which is generally illegible but includes the shipment of "asbestos rope." The second document is a hand-drawn image of a circular structure that has a note that reads reading "½ Dia. Asbestos Rope, 47¼ lg. approx. Cement in place[.]" Mr. Davis did not identify "asbestos rope" as a product that Decedent ever used or to which Decedent was exposed.

On September 16, 2022, Appellee filed a motion for summary judgment. Appellee argued that (1) it was not liable for products produced by Sunbeam

pursuant to the law regarding successor liability,[2] (2) Appellants did not present sufficient evidence that Decedent was exposed to asbestos by a product manufactured or supplied by Appellee or that Decedent had any personal knowledge that the products he worked with contained asbestos, (3) Appellants presented insufficient evidence that Decedent worked with asbestos-containing products on a regular, frequent, and proximate basis, and (4) that the statute of repose barred Appellants' recovery with respect to the Sunbeam furnaces with which Decedent worked and the asbestos to which he was exposed. In support of its motion, Appellee attached several documents purporting to show that the products used by Decedent while employed at Pittsburgh Forgings did not contain asbestos.

Appellants filed a response in opposition to the motion for summary judgment in which they relied on Mr. Davis's testimony, the deposition testimony of Appellee's counsel, Louis J. Stack, and Appellants' experts' reports. They also offered two documents purporting to show that Appellee "sold asbestos containing parts to Pittsburgh Forging[] during the time [Decedent] worked there," in an attempt to corroborate Mr. Davis's testimony that he and Decedent were exposed to asbestos from numerous products from their work on Sunbeam furnaces. Response in Opposition to Motion for Summary Judgment, 12/21/22, at 6.

_____

[2] In particular, Appellee asserted that it was not the successor to any entity that manufactured furnaces under the name "Sunbeam," and is not the successor to Sunbeam Equipment Corporation.

On November 6, 2023, the trial court granted Appellee's motion for summary judgment, dismissing all claims and cross-claims against Appellee. The court found that Appellants failed to produce any evidence that Decedent was exposed to asbestos at all, let alone from any products produced by Appellee or Sunbeam. The trial court emphasized that "an individual's belief that a product contains asbestos is insufficient; there must be evidence to support the belief." Trial Ct. Op., 2/1/24, at 7.[3]

On November 16, 2023, Appellants filed a motion for reconsideration of the court's order asserting that it had new evidence in support of its opposition to summary judgment. Following its review, the court denied the motion for reconsideration for numerous reasons, including its conclusion that the "new" evidence was not new, but newly-discovered by Appellant and evidence that Appellant had discovered and could have presented to the court before the court ruled on the motion for summary judgment.[4]

On September 12, 2024, the trial court entered an order marking the case "settled as to all non-bankrupt parties except the Manville Fund without prejudice. Case dismissed against Manville Fund without prejudice to be reopened as an arbitration matter." Order, 9/12/24.

---

[3] Having found that Appellants failed to adduce sufficient evidence that Decedent was exposed to asbestos from any source, the court declined to address the other grounds for relief raised by Appellee.

[4] Appellants filed an appeal from the November 6, 2023 order granting Appellee's motion for summary judgment. *See Palumbo v. SECO/Warwick Corporation, et al*, No.3200 EDA 2023. On April 26, 2024, this Court quashed the appeal as interlocutory.

This timely appeal followed. Appellants filed a court-ordered Rule 1925(b) statement. The trial court filed a Rule 1925(a) opinion directing this Court to its February 1, 2024 opinion in which it had set forth the reasons for granting Appellee's motion for summary judgment and denying Appellants' motion for reconsideration.

Appellants raise the following issue on appeal:

> Did the lower court err as a matter of law in failing to view the entire record in the light most favorable to the non-moving party, failing to consider the discovery violations by [Appellee] that deprived the court of relevant evidence in deciding the motion for summary judgment when such evidence was put before the court by the non-moving party through the motion for reconsideration, and granting the motion for summary judgment by finding that a jury verdict in favor of [Appellants] would be based on impermissible speculation?

Appellants' Brief at 8.

***

Appellants challenge the entry of summary judgment in favor of Appellee. Our Supreme Court has clarified our role as the appellate court as follows:

> On appellate review [ ], an appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion. But the issue as to whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our standard of review is *de novo*. This means we need not defer to the determinations made by the lower tribunals. To the extent that this Court must resolve a question of law, we shall review the grant of summary judgment in the context of the entire record.

*Summers v. Certainteed Corp.*, 997 A.2d 1152, 1159 (Pa. 2010) (citation omitted).

A trial court may grant summary judgment "only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Id.* (citation omitted); *see also* Pa.R.Civ.P. 1035.2(1). "When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party." *Summers*, 997 A.2d at 1159. "In so doing, the trial court must resolve all doubts as to the existence of a genuine issue of material fact against the moving party, and, thus, may only grant summary judgment where the right to such judgment is clear and free from all doubt." *Id.* (citation and internal quotation marks omitted).

In an asbestos case, a plaintiff must establish, *inter alia*, that he worked in the vicinity of a product that contained asbestos; it is not sufficient to argue the mere presence of asbestos in the workplace:

> [a] plaintiff must establish that the injuries were caused by a product of the particular manufacturer or supplier. Additionally, in order for a plaintiff to defeat a motion for summary judgment, a plaintiff must present evidence to show that he inhaled asbestos fibers shed by the specific manufacturer's product. **Therefore, a plaintiff must establish more than the presence of asbestos in the workplace; he must prove that he worked in the vicinity of the product's use. Summary judgment is proper when the plaintiff has failed to establish that the defendants' products were the cause of plaintiff's injury**.

*Krauss v. Trane U.S. Inc.*, 104 A.3d 556, 563 (Pa. Super. 2014) (emphasis added).

The plaintiff also bears the burden of identifying a defendant "as a manufacturer or seller of a particular offending product, before . . . injuries may be found to be proximately caused by some negligence of [the defendant]." *Cummins v. Firestone Tire & Rubber Co.*, 495 A.2d 963, 967 (Pa. Super. 1985). The failure to identify the offending product is fatal to a plaintiff's claim because without proper product identification, the plaintiff cannot show a defendant manufactured or sold the product. *Id.* at 969.

With respect to product identification, this Court has explained that even if the plaintiff cannot identify the specific asbestos-containing products that the specific defendants produced, the plaintiff may establish that he worked in proximity to the product that contained asbestos:

> the testimony of a witness with knowledge relating to the plaintiff's workplace exposure to an asbestos-containing product is admissible when probative. Even when the plaintiff is not able to identify specific products manufactured by particular defendants, **the testimony of co-workers is admissible to establish that the plaintiff worked in close proximity to the asbestos products in question**.

*Wright v. Allied Signal, Inc.*, 963 A.2d 511, 515 (Pa. Super. 2008) (citations omitted, emphasis added).

Once a plaintiff establishes that he worked in proximity to the asbestos in the defendant's product, he must demonstrate that his exposure was frequent, regular, and proximate. *Eckenrod v. GAF Corp.*, 544 A.2d 50, 53 (Pa. Super. 1988). The mere existence of asbestos-containing products in the

workplace does not establish adequate exposure to asbestos. *Id.* at 52. The Pennsylvania Supreme Court instructs that the:

> frequency, regularity and proximity factors in asbestos litigation . . . are to be applied in an evaluative fashion as an aid in distinguishing cases in which the plaintiff can adduce evidence that there is a sufficiently significant likelihood that the defendant's product caused his harm, from those in which such likelihood is absent on account of only casual or minimal exposure to the defendant's product.

*Gregg v. V-J Auto Parts, Co.*, 943 A.2d 216, 225 (Pa. 2007). Further, our Supreme Court has recognized that in considering a motion for summary judgment, it is appropriate for a court

> to make a reasoned assessment concerning whether, in light of the evidence concerning frequency, regularity, and proximity of a plaintiff's/decedent's asserted exposure, a jury would be entitled to make the necessary inference of a sufficient causal connection between the defendant's product and the asserted injury.

*Id.* at 227. The trial court thus bears a "duty to prevent questions from going to the jury which would require it to reach a verdict based on conjecture, surmise, guess or speculation." *Krauss*, 104 A.3d at 568 (citation omitted).

Appellants make four arguments to support its conclusion that the trial court erred. First, Appellants contend that the trial court erred in failing to review the record in the light most favorable to them as the non-moving party. Appellants' Brief at 25-26. Appellants also claim that the documents appended to their response to the motion for summary judgment established that Decedent was exposed to asbestos from the Sunbeam furnaces. *Id.* In particular, Appellants argue that the trial court erred in rejecting the shipping order and diagram of the furnace because the court found they were

"unauthenticated." *Id.* at 23-24. Appellants assert that because Appellee produced these documents in discovery and Appellee's corporate representative verified them, Appellee properly authenticated the documents. *Id.*

Third, Appellants argue that the trial court erred in concluding that, even if it had considered the documents proffered by Appellants in response to the motion for summary judgment, they were insufficient to establish the existence of a genuine issue of material fact. *Id.* at 25. Appellants claim, to the contrary, that the documents demonstrate that Sunbeam sold furnaces to Pittsburgh Forging during the relevant time period, thus corroborating Mr. Davis's testimony that he and Decedent worked on these "very furnaces" regularly over the course of several decades. *Id.*

Appellants last argue that the trial court further compounded its error by placing weight on Mr. Davis's failure to identify the specific products that allegedly contained asbestos. *Id.* at 26-27.

We disagree with Appellants. When the trial court initially ruled on the motion for summary judgment, it reviewed the documents and deposition testimony that the parties had submitted and concluded that Appellants had failed to provide any evidence that Decedent, when working at Pittsburgh Forging, had been exposed asbestos to any asbestos, let alone asbestos from a product manufactured or sold by Sunbeam. Trial Ct. Op. at 6-7. In particular, the trial court noted that Appellants relied on Mr. Davis's testimony to establish that Decedent was exposed to asbestos through Decedent's work

repairing the Sunbeam furnaces. Mr. Davis, however, merely made the bald allegation that he believed that the firebricks, insulation, and mortar contained asbestos. Mr. Davis could not articulate the basis for his conclusion that these items contained asbestos and did not testify that he saw a label on these items that listed asbestos as an ingredient. Thus, the trial court concluded that Appellants could not establish that Decedent was exposed to any asbestos-containing product, let alone one produced by Appellee. *Id.* The court further relied on Mr. Davis's testimony that he was not trained in identifying asbestos and could not tell the difference between a brick that contained asbestos and one that did not. *Id.*

With respect to the documents Appellants attached to their response to the motion for summary judgment—the order form purporting to show that Sunbeam received a delivery of asbestos rope and the diagram of a Sunbeam furnace showing that it contained asbestos rope—the trial court initially found that the documents were not part of the record before it in deciding the motion. *Id.* The court further explained that even if they were part of the record, they were "insufficient to satisfy [Appellants'] burden" because neither document refers to any Sunbeam product on which Decedent worked and no witness, including Mr. Davis, connected the asbestos rope to a furnace on which Decedent worked. *Id.* at 7-8.

Following our *de novo* review, we discern no error by the trial court. The record reflects that Mr. Davis's testimony, whether standing alone or in consideration with the documents submitted by Appellants in opposition to the

motion and drawing all reasonable inferences in favor of Appellants, was insufficient to establish "more than the presence of asbestos in the workplace." The testimony and evidence, viewed in the light most favorable to Appellants as the non-movants, consists of: (1) an allegedly asbestos-containing product—an asbestos rope—possibly present in the workplace, but no evidence that Decedent came into contact with this product; and (2) testimony regarding products with which Decedent came into contact but no evidence that those products contained asbestos.

Appellants ask this Court to infer from this evidence that Decedent worked with or around an asbestos rope, even though not a single witness with personal knowledge testified that he saw Decedent do so. Appellants simply failed to present any evidence that Decedent encountered an asbestos-containing component of a Sunbeam furnace. We, thus, cannot conclude based simply on the purported presence of the furnace and Mr. Davis's unsupported personal belief that the components of a Sunbeam furnace that Decedent worked with or around contained asbestos. At best, and considering all reasonable inferences in favor of Appellants, Appellants can only establish that a Sunbeam furnace may have an asbestos rope in it. Appellant, however, failed to provide any direct or circumstantial evidence that Decedent was exposed to the asbestos rope.

Furthermore, our review indicates that Appellants did not present any evidence as to the frequency, regularity, and proximity of any asbestos-containing products, let alone any asbestos-containing products produced by

Appellee, sufficient to entitle a jury to make the necessary inference of a causal connection between the defendant's product and the asserted injury. Because the trial court has the "duty to prevent questions from going to the jury which would require it to reach a verdict based on conjecture, surmise, guess or speculation[,]" **Krauss**, 104 A.3d at 568, the trial court properly granted summary judgment in this matter. Appellants are, thus, not entitled to relief.

**\*\*\***

Appellants next claim that the trial court erred in denying their motion for reconsideration. Appellants' Brief at 28-52. In particular, Appellants assert that the trial court abused its discretion because the court should have granted the motion for reconsideration to sanction Appellee for failing to provide complete discovery responses. Appellants claim that Appellee failed to timely disclose the "new" evidence to them and that if Appellee had done so, the new evidence would have "illustrated that several issues of material fact exist and denial of [Appellee's] motion for summary judgment was warranted."[5] *Id.* at 29. The trial court rejected this argument and denied Appellants' motion for reconsideration after finding, *inter alia*, that Appellants' purportedly new evidence was not, in fact, new. Trial Ct. Op. at 10.

---

[5] To the extent that Appellants also discuss purportedly new documents reflecting on the issue of Appellee's successor liability, we need not address that claim as the trial court did not grant summary judgment to Appellee on the issue of successor liability.

It is well-settled that "issues raised in motions for reconsideration are beyond the jurisdiction of this Court and thus may not be considered by this Court on appeal." *Rabatin v. Allied Glove Corp.*, 24 A.3d 388, 391 (Pa. Super. 2011). *See also Erie Ins. Exchange v. Larrimore*, 987 A.2d 732, 743 (Pa. Super. 2009) ("Denial of reconsideration is not subject to appellate review."); *Bollard & Assoc., Inc. v. H & R Indus., Inc.* 161 A.3d 254, 256 (Pa. Super. 2017) (same). Accordingly, we are without jurisdiction to consider this issue.

Even if we had jurisdiction to review whether the court abused its discretion in denying the motion for reconsideration, we would find that the court properly exercised its discretion. Appellants argue that two months before the trial date and nine months after the parties had fully briefed the motion for summary judgment, Appellants discovered that Appellee had provided inadequate discovery responses by failing to include in its answers to interrogatories the name and docket number of other litigation in which Appellee was involved. Appellants argued that if they had had discovered the information that another plaintiff had sued Appellee, it would have discovered depositions in that case that established that the Sunbeam furnaces contained asbestos.

With respect to this argument, the court opined that it denied the motion for reconsideration because Appellants had served the discovery requests on Appellee in 2021, two and a half years before the trial court granted the motion for summary judgment and Appellee had objected to the interrogatory.

Appellants did nothing. Then, in September 2023, nine months after the parties had fully briefed the motion for summary judgment and two months before the scheduled trial date, Appellants' counsel discovered the existence of a prior Philadelphia asbestos case, ***Myers v. ABB, Inc., et al***, September Term, 2018 No. 1359. Appellants argued that depositions in this case demonstrated that Sunbeam used asbestos in its furnaces and that Appellee should have included this information in earlier discovery requests. Appellants, however, did nothing about this information until after the trial court had granted Appellees' motion for summary judgment and beyond the scheduled trial date.

The trial court did not abuse its discretion in denying the motion for reconsideration. It properly found that "the 'new' evidence …was not new, but belatedly discovered by [Appellants]." Trial Ct. Op. at 10. The trial court has significant discretion in managing its court schedule and Appellants could have discovered this information earlier by filing an appropriate discovery motion. By presenting the evidence after the trial court had granted Appellee's motion for summary judgment and after the scheduled trial date, the trial court properly exercised discretion in denying the motion for reconsideration.

\*\*\*

In sum, Appellants' claims do not entitle them to relief. We, thus, affirm the order of the trial court granting summary judgment in favor of Appellee and dismissing Appellants' claims against it.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/27/2025